**EXHIBIT K**

38- page Lesson Plan dated May 9, 2024

FOR OFFICIAL USE ONLY (FOUO)



## _RAIO DIRECTORATE_

# CREDIBLE FEAR OF PERSECUTION AND TORTURE DETERMINATIONS

## LESSON PLAN

FOR OFFICIAL USE ONLY (FOUO)

*This Page Left Blank Intentionally*

**RAIO Directorate**

# CREDIBLE FEAR OF PERSECUTION AND TORTURE DETERMINATIONS

## Lesson Plan

## LESSON PLAN DESCRIPTION:

The purpose of this Lesson Plan is to explain how to determine whether a noncitizen subject to expedited removal or an arriving stowaway has a credible fear of persecution or torture using the credible fear standard. Note that, where appropriate, this Lesson Plan refers to guidance in other RAIO modules that broadly applies to various screenings and adjudications conducted by Asylum Officers, Refugee Officers, and Immigration Officers all within the RAIO directorate. However, the referenced guidance also specifically relates to considerations relating to credible fear determinations.

## ENABLING PERFORMANCE OBJECTIVES

1. Identify which persons are subject to expedited removal. (ACRR7)(OK4)(ACRR2)(ACRR11)(APT2)

2. Examine the function of credible fear screening. (ACRR7)(OK1)(OK2)(OK3)

3. Define the standard of proof required to establish a credible fear of persecution. (ACRR7)

4. Identify the elements of "torture" as defined in the *Convention Against Torture* and the regulations that are applicable to a credible fear of torture determination (ACRR7)

5. Describe the types of harm that constitute "torture" as defined in the *Convention Against Torture* and the regulations. (ACRR7)

6. Define the standard of proof required to establish a credible fear of torture. (ACRR7)

7. Identify the applicability of bars to asylum and withholding of removal in credible fear interviews and determinations. (ACRR3)(ACRR7)

## BACKGROUND READING

1. Credible Fear Procedures Manual (Draft); INA § 208; INA § 235; 8 C.F.R. §§ 208.16-18; 8 C.F.R. § 208.30; 8 C.F.R. § 235.3.

2. Immigration and Naturalization Service, *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312 (March 6, 1997).

3. Bo Cooper, *Procedures for Expedited Removal and Asylum Screening under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996*, 29 CONN. L. REV. 1501, 1503 (1997).

4. Immigration and Naturalization Service, *Regulations Concerning the Convention Against Torture*, 64 Fed. Reg. 8478 (February 19, 1999).

5. Immigration and Naturalization Service, *Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act*, 67 Fed. Reg. 68924 (November 13, 2002).

6. Customs and Border Protection, *Designating Aliens For Expedited Removal*, 69 Fed. Reg. 48877 (August 11, 2004).

7. U.S. Committee on International Religious Freedom, *Study on Asylum Seekers in Expedited Removal – Report on Credible Fear Determinations*, (February 2005).

8. Customs and Border Protection, *Treatment of Cuban Asylum Seekers at Land Border Ports of Entry*, Memorandum for Directors, Field Operations, (Washington, DC: 10 June 2005).

9. Immigration and Customs Enforcement, *Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture*, ICE Directive No. 11002.1 (effective January 4, 2010).

10. Department of Homeland Security, *Eliminating Exception to Expedited Removal Authority for Cuban Nationals Arriving by Air*, 82 Fed. Reg. 4769 (January 17, 2017).

11. Department of Homeland Security, *Eliminating Exception to Expedited Removal Authority for Cuban Nationals Encountered in the United States or Arriving by Sea*, 82 Fed. Reg. 4902 (January 17, 2017).

## ADDITIONAL RESOURCES

1. United Nations. Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (see RAIO Training Module, International Human Rights Law).

2. Other RAIO Training Modules (referenced herein).

3. Westlaw (see case law cited herein).

4. Credible Fear forms and templates (found on the Asylum Knowledge Center).

## CRITICAL TASKS

| Task/ Skill # | Task Description |
|---|---|
| ILR6 | Knowledge of U.S. case law that impacts RAIO. |
| OK25 | Knowledge of the Asylum Division history. |
| OK26 | Knowledge of the Asylum Division mission, values, and goals. |
| OK27 | Knowledge of how the Asylum Division contributes to the missions and goals of RAIO, USCIS, and DHS. |
| OK28 | Knowledge of the Asylum Division jurisdictional authority. |
| ACRR2 | Knowledge of the applications eligible for special group processing (e.g., ABC, NACARA, Mendez). |
| ACRR7 | Knowledge of relevant policies, procedures, and guidelines for establishing noncitizen eligibility for credible fear of persecution or torture. |
| RI2 | Skill in identifying the information required to establish eligibility. |
| | Knowledge of inadmissibility grounds relevant to the expedited removal process and of mandatory bars to asylum and withholding of removal. (4) |

|        |                                                                                                                              |
| ------ | ---------------------------------------------------------------------------------------------------------------------------- |
|        | Knowledge of inadmissibility grounds relevant to the expedited removal process and of mandatory bars to asylum and withholding of removal. (4) |
| APT2   | Knowledge of the appropriate points of contact to gain access to an interviewee in custody (e.g., attorney, detention facility personnel). |
| TPM6   | Skill in organizing case and research materials.                                                                              |
| DM2    | Skill in applying legal, policy, and procedural guidance (e.g., statutes, case law) to information and evidence.              |
| DM5    | Skill in analyzing complex issues to identify appropriate responses or decisions.                                            |

## SCHEDULE OF REVISIONS

| Date              | Section (Number and Name) | Brief Description of Changes       | Made By            |
| ----------------- | ------------------------- | ---------------------------------- | ------------------ |
| **February 13, 2017** | Multiple                  | See accompanying Executive Summary | Asylum Division    |
| **May 17, 2022**  | Multiple                  | See accompanying Executive Summary | Asylum Division    |
| **February 20, 2023** | Multiple                  | See accompanying Executive Summary | Asylum Division    |
| **May 9, 2024**   | Multiple                  | See accompanying Executive Summary | Asylum Division    |

FOR OFFICIAL USE ONLY (FOUO)

|  |  |  |  |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

# TABLE OF CONTENTS

1   INTRODUCTION ......................................................................................................10
2   BACKGROUND .......................................................................................................10

2.1  Noncitizens Subject to Expedited Removal ........................................................11
2.2  Noncitizens Seeking Admission Who are Exempt from Expedited Removal ...................13
2.3  Historical Background ........................................................................................14

3   FUNCTION OF CREDIBLE FEAR SCREENING ...........................................15
4   DEFINITION OF CREDIBLE FEAR OF PERSECUTION AND CREDIBLE FEAR
    OF TORTURE ...........................................................................................................16

4.1  Definition of Credible Fear of Persecution .........................................................16
4.2  Definition of Credible Fear of Torture ................................................................16

5   THE STANDARD OF PROOF FOR CREDIBLE FEAR DETERMINATIONS AND
    THE BURDEN OF PROOF ......................................................................................17

5.1  Credible Fear Standard of Proof: Significant Possibility ....................................17
5.2  Important Considerations in Interpreting and Applying the Standard ..................18
5.3  Burden of Proof / Testimony and Country Conditions Information as Evidence ................19
5.4  Identity ...............................................................................................................20

6   CREDIBILITY ..........................................................................................................20

6.1  Credibility Standard ...........................................................................................20
6.2  Addressing Credibility in a Credible Fear Interview ..........................................21
6.3  Assessing Credibility when Making a Credible Fear Determination ...................21
6.4  Documenting a Credibility Determination ..........................................................24

7   ESTABLISHING A CREDIBLE FEAR OF PERSECUTION .........................24

7.1  General Considerations .......................................................................................24
7.2  Past Persecution .................................................................................................25

     7.2.1  Severity of Harm: .....................................................................................25
     7.2.2  Nexus (Motivation): .................................................................................25
     7.2.3  Persecutor: ...............................................................................................26

7.3  Well-Founded Fear of Persecution .....................................................................26

     7.3.1  The Mogharrabi Test: ...............................................................................27
     7.3.2  Pattern or Practice ...................................................................................28
     7.3.3  Internal Relocation ...................................................................................28

7.4   Multiple Citizenship ................................................................................30
7.5   Statelessness/Last Habitual Residence ..................................................31

**8     ESTABLISHING A CREDIBLE FEAR OF TORTURE ...................................................31**

8.1   Definition of Torture ..............................................................................31
8.2   General Considerations ..........................................................................32

**9     APPLICABILITY OF BARS TO ASYLUM AND WITHHOLDING OF REMOVAL .........................34**

9.1   No Bars Considered in Credible Fear Screening.....................................34
9.2   Asylum Officer Must Elicit Testimony ..................................................34
9.3   Flagging Potential Bars ..........................................................................35

**10    OTHER ISSUES .............................................................................................35**

10.1 Treatment of Dependents ......................................................................35
10.2 Attorneys and Consultants.....................................................................36
10.3 Factual Summary ..................................................................................36

**11    SUMMARY ...................................................................................................36**

11.1 Expedited Removal ...............................................................................36
11.2 Function of Credible Fear Screening.....................................................36
11.3 Credible Fear Standard of Proof: Significant Possibility ......................37
11.4 Credibility..............................................................................................37
11.5 Establishing a Credible Fear of Persecution.........................................37
11.6 Establishing a Credible Fear of Torture ...............................................37
11.7 Other Issues ..........................................................................................38

# 1    INTRODUCTION

The purpose of this Lesson Plan is to explain how to determine whether a noncitizen seeking admission to the U.S., who is subject to expedited removal or is an arriving stowaway, has a credible fear of persecution or torture using the significant possibility standard defined in the Immigration and Nationality Act (INA or the Act), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), and implementing regulations.[1]

# 2    BACKGROUND

The expedited removal provisions of the INA were added by section 302 of IIRIRA, and became effective April 1, 1997.[2]

In expedited removal, certain noncitizens seeking admission to the United States are immediately removable from the United States by the Department of Homeland Security (DHS), unless they indicate an intention to apply for asylum or express a fear of persecution or torture or a fear of return to their home country.[3] Noncitizens who are present in the U.S., and who have not been admitted, are treated as applicants for admission.  Noncitizens subject to expedited removal are not entitled to a merits interview or hearing, or further review unless they are able to establish a credible fear of persecution or torture.[4]

INA section 235 and its implementing regulations provide that certain categories of noncitizens are subject to expedited removal.  These include: arriving stowaways; certain arriving noncitizens at ports of entry who are inadmissible under INA section 212(a)(6)(C) (because they have presented fraudulent documents or made a false claim to U.S. citizenship or other material misrepresentations to gain admission or other immigration benefits) or 212(a)(7) (because they lack proper documents to gain admission); and certain designated noncitizens who have not been admitted or paroled into the U.S.

Those noncitizens subject to expedited removal who indicate an intention to apply for asylum, a fear of persecution or torture, or a fear of return to their home country are referred to asylum officers to determine whether they have a credible fear of persecution

---

[1]  USCIS is enjoined from implementing, enforcing, or applying the joint asylum rule entitled *Procedures for Asylum and Withholding of Removal; Credible Fear and Reasonable Fear Review*, 85 Fed. Reg. 80274 (Dec. 11, 2020) ("Global Asylum Rule"). *See Pangea Legal Servs., et al. v. DHS, et al.*, 512 F.Supp.3d 966 (N.D. Cal. 2021). This preliminary injunction remains in effect as of the date of this Lesson Plan.

[2]  INA § 235(a)(2); § 235(b)(1).

[3]  INA § 235(a)(1).

[4]  Note, however, that if an *asylum officer* determines that the noncitizen does not have a credible fear of persecution or torture, the noncitizen may request immigration judge review of the negative determination. *See* INA § 235(b)(1)(B)(iii)(III); *see also* 8 C.F.R. § 208.30(g)(1).

or torture.  An asylum officer will then conduct a credible fear interview to determine if there is a significant possibility that the noncitizen can establish eligibility for asylum under section 208 of the INA or for withholding of removal under section 241(b)(3) of the Act.  Pursuant to regulations implementing the Convention Against Torture (CAT) and the Foreign Affairs Reform and Restructuring Act of 1998, the asylum officer is also responsible for determining whether there is a significant possibility the noncitizen can establish eligibility for protection under the Convention Against Torture through withholding of removal or deferral of removal.

## 2.1    Noncitizens Subject to Expedited Removal

The following categories of noncitizens may be subject to expedited removal:

- Arriving noncitizens coming or attempting to come into the United States at a port of entry or a noncitizen seeking transit through the United States at a port of entry.[5]

    - Note that noncitizens attempting to enter the United States at a land border port of entry with Canada must first establish eligibility for an exception to the Safe Third Country Agreement, through a Threshold Screening interview, in order to receive a credible fear interview.[6]
    - Individuals seeking admission under the Guam and Northern Mariana Islands visa waiver program under INA section 212(l) are not exempt from expedited removal provisions of the INA.

- Noncitizens who are interdicted in international or United States waters and brought to the United States by any means, whether or not at a port of entry.

    This category does not include noncitizens interdicted at sea who are never brought to the United States. [7]

- Noncitizens who have been paroled under INA section 212(d)(5) on or after April 1, 1997, may be subject to expedited removal upon termination of their parole. This provision encompasses those noncitizens paroled for urgent humanitarian or significant public benefit reasons.

---

[5]  8 C.F.R. § 235.3(b)(1)(i); *See* 8 C.F.R. § 1.2 for the definition of an "arriving alien."

[6]  8 C.F.R. § 208.30(e)(6). *See also* ADOTC Lesson Plan, Safe Third Country Threshold Screening.

[7]  8 C.F.R. § 1.2; *see also* Immigration and Naturalization Service, *Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality* Act, 67 Fed. Reg. 68924 (Nov. 13, 2002); Department of Homeland Security*, Eliminating Exception to Expedited Removal Authority for Cuban Nationals Encountered in the United States or Arriving by Sea*, 82 Fed. Reg. 4902 (Jan. 17, 2017), as corrected in Department of Homeland Security, *Eliminating Exception to Expedited Removal Authority for Cuban Nationals Encountered in the United States or Arriving by Sea*, 82 Fed. Reg. 8431 (Jan. 25, 2017).

This category does not include those who were given advance parole as described in Subsection B.6. below.

- Noncitizens who have arrived in the United States by sea (either by boat or by other means) who have not been admitted or paroled, and who have not been physically present in the U.S. continuously for the two-year period prior to the inadmissibility determination.[8]

- Noncitizens who have been apprehended within 100 air miles of any U.S. international land border, who have not been admitted or paroled, and who have not established to the satisfaction of an immigration officer (typically a Border Patrol Agent) that they have been physically present in the U.S. continuously for the 14-day period immediately prior to the date of encounter.[9]

- Noncitizens who either: (a) did not arrive by sea, are encountered by an immigration officer anywhere in the United States more than 100 air miles from a U.S. international land border, and have not been physically present in the United States continuously for the two-year period immediately prior to the date of the determination of inadmissibility; or (b) did not arrive by sea, who are encountered by an immigration officer within 100 air miles from a U.S international land border, and who have been physically present in the United States continuously at least 14 days but less than two years immediately prior to the date of the determination of inadmissibility.[10]

---

[8] Immigration and Naturalization Service, *Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act*, 67 Fed. Reg. 68924 (Nov. 13, 2002); Department of Homeland Security, *Eliminating Exception to Expedited Removal Authority for Cuban Nationals Encountered in the United States or Authority for Cuban Nationals Encountered in the United States or Arriving by Sea*, 82 Fed. Reg. 4902 (Jan. 17, 2017), as corrected in Department of Homeland Security, *Eliminating Exception to Expedited Removal Authority for Cuban Nationals Encountered in the United States or Arriving by Sea*, 82 Fed. Reg. 8431 (Jan. 25, 2017).

[9] Customs and Border Protection, *Designating Aliens For Expedited Removal*, 69 Fed. Reg. 48877 (Aug. 11, 2004); Department of Homeland Security, *Eliminating Exception to Expedited Removal Authority for Cuban Nationals Encountered in the United States or Arriving by Sea*, 82 Fed. Reg. 4902 (Jan. 17, 2017), as corrected in Department of Homeland Security, *Eliminating Exception to Expedited Removal Authority for Cuban Nationals Encountered in the United States or Arriving by Sea*, 82 Fed. Reg. 8431 (Jan. 25, 2017).

[10] On July 23, 2019, DHS published a Federal Register notice enabling DHS to exercise the full remaining scope of its statutory authority to place noncitizens in expedited removal who are determined to be inadmissible under INA § 212(a)(6)(C) or (a)(7) and who have not affirmatively shown to the satisfaction of an immigration officer that they have been physically present in the United States continuously for the two-year period immediately preceding the date of the determination of inadmissibility, with limited exceptions. Designating Aliens for Expedited Removal, 84 Fed. Reg. 35,409 (July 23, 2019). However, on March 21, 2022, DHS rescinded the July 23, 2019 Notice. Rescission of the Notice of July 23, 2019, Designating Aliens for Expedited Removal, 87 Fed. Reg. 16022 (Mar. 21, 2022).

## 2.2    Noncitizens Seeking Admission Who are Exempt from Expedited Removal

The following categories of noncitizens are exempt from expedited removal:[11]

- Stowaways[12] are not eligible to apply for admission to the U.S., and therefore they are not subject to expedited removal under INA section 235(b)(1)(A)(i). They are also not eligible for a full hearing in removal proceedings under INA section 240.  However, if a stowaway indicates an intention to apply for asylum under INA section 208 or a fear of persecution, an asylum officer will conduct a credible fear interview and refer the case to an immigration judge for an asylum and/or Convention Against Torture hearing if the stowaway meets the credible fear standard.

- Persons granted asylum status under INA section 208.

- Persons admitted to the United States with refugee status under INA section 207.

- Persons admitted to the United States as lawful permanent residents, and such status has not been terminated in exclusion, deportation, or removal proceedings.

- Persons paroled into the United States prior to April 1, 1997.

- Persons paroled into the United States pursuant to a grant of advance parole that the noncitizen applied for and obtained in the United States prior to the noncitizen's departure from and return to the United States.

- Persons denied admission on charges other than or in addition to INA Section 212(a)(6)(C) or 212(a)(7).

- Persons applying for admission under INA Section 217, Visa Waiver Program for Certain Visitors ("VWP").  This exemption includes nationals of non-VWP countries who attempt entry by posing as nationals of VWP countries.

- Noncitizens determined to be Unaccompanied Children.

---

[11] While Cuban citizens and nationals were previously exempt from expedited removal, the regulations at 8 C.F.R. § 235.3(b)(1)(i) were modified to remove the exemption. *See* Department of Homeland Security*, Eliminating Exception to Expedited Removal Authority for Cuban Nationals Arriving by Air*, 82 Fed. Reg. 4769 (Jan. 17, 2017), as corrected in Department of Homeland Security, *Eliminating Exception to Expedited Removal Authority for Cuban Nationals Arriving by Air*, 82 Fed. Reg. 8353 (Jan. 25, 2017).

[12]   INA § 235(a)(2).

## 2.3    Historical Background

- In 1991, the Immigration and Naturalization Service (INS) developed the credible fear of persecution standard[13] to screen for possible refugees among the Haitian migrants who were interdicted at sea during the exodus following a *coup d'etat* in Haiti.

- Prior to implementation of the expedited removal provisions of IIRIRA, credible fear interviews were first conducted by INS trial attorneys and later by asylum officers, to assist the district director in making parole determinations for detained noncitizens.

- In 1996, the INA was amended to allow for the expedited removal of certain inadmissible noncitizens, who would not be entitled to an immigration hearing or further review unless they were able to establish a credible fear of persecution. At the outset, expedited removal was mandatory for "arriving aliens," and the Attorney General was given the discretion to designate applicability to certain other noncitizens who have not been admitted or paroled and who have not established to the satisfaction of an immigration officer continuous physical presence in the United States for the two-year period immediately prior to the date of the inadmissibility determination.[14] Initially, expedited removal was only applied to "arriving aliens."

- The credible fear screening process was expanded to include a credible fear of torture screening with the promulgation of regulations concerning the Convention against Torture, effective March 22, 1999.[15]

- Designation of other groups of noncitizens for expedited removal

    1. In November 2002, the Department of Justice expanded the application of the expedited removal provisions of the INA to certain noncitizens who arrived in the United States by sea, who have not been admitted or paroled and who have not been physically present in the United States continuously for the two year-period prior to the inadmissibility determination.[16]

    2. On August 11, 2004, DHS further expanded the application of expedited removal to noncitizens determined to be inadmissible under sections 212(a)(6)(C) or (7) of the INA who are physically present in the U.S. without having been admitted or paroled, who are apprehended within 100 air miles of

---

[13] The credible fear standard as it is currently applied to interdicted migrants outside the United States is beyond the scope of this Lesson Plan.

[14] Immigration and Naturalization Service, *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10313 (Mar. 6, 1997).

[15] Immigration and Naturalization Service, *Regulations Concerning the Convention Against Torture*, 64 Fed. Reg. 8478 (Feb. 19, 1999); 8 C.F.R. § 208.30(e)(3).

[16] Immigration and Naturalization Service, *Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act*, 67 Fed. Reg. 68924 (Nov. 13, 2002).

the U.S. international land border, and who have not established to the satisfaction of an immigration officer that they have been physically present in the U.S. continuously for the fourteen-day (14-day) period immediately prior to the apprehension.[17]

3. On January 17, 2017, DHS published a notice to apply the November 13, 2002 expanded application of expedited removal, and the August 11, 2004 expanded application of expedited removal, to Cuban citizens and nationals, who had previously been exempt.[18]

4. On July 23, 2019, DHS published a Federal Register notice enabling DHS to exercise the full remaining scope of its statutory authority to place noncitizens in expedited removal who are determined to be inadmissible under INA § 212(a)(6)(C) or (a)(7) and who have not affirmatively shown to the satisfaction of an immigration officer that they have been physically present in the United States continuously for the two-year period immediately preceding the date of the determination of inadmissibility, with limited exceptions.[19] However, on March 21, 2022, DHS rescinded the July 23, 2019 Notice.[20]

5. The expedited removal provisions of the INA generally require that all noncitizens subject to expedited removal be detained through the credible fear determination until removal, unless found to have a credible fear of persecution.[21] However, the governing regulation permits the parole of an individual in expedited removal, in the exercise of discretion and on a case-by-case basis, consistent with 8 CFR 212.5(b).[22]

## 3    FUNCTION OF CREDIBLE FEAR SCREENING

In applying the credible fear standard, it is critical to understand the function of the credible fear screening process. As explained by the Department of Justice when issuing regulations adding Convention Against Torture screening to the credible fear process, the process attempts to "to quickly identify potentially meritorious claims to protection and

---

[17]  INA §212(a)(6)(C), (a)(7); Customs and Border Protection, *Designating Aliens For Expedited Removal*, 69 Fed. Reg. 48877 (Aug. 11, 2004).

[18]  Department of Homeland Security, *Eliminating Exception to Expedited Removal Authority for Cuban Nationals Encountered in the United States or Arriving by Sea*, 82 Fed. Reg. 4902 (Jan. 17, 2017), as corrected in Department of Homeland Security, *Eliminating Exception to Expedited Removal Authority for Cuban Nationals Encountered in the United States or Arriving by Sea*, 82 Fed. Reg. 8431 (Jan. 25, 2017).

[19] Designating Aliens for Expedited Removal, 84 Fed. Reg. 35,409 (July 23, 2019).

[20] Rescission of the Notice of July 23, 2019, Designating Aliens for Expedited Removal, 87 Fed. Reg. 16022 (Mar. 21, 2022).

[21]  INA § 235(b)(1)(B)(iii)(IV).

[22]  8 C.F.R. § 235.3(b)(2)(iii) and (4)(ii).

to resolve frivolous ones with dispatch.… If an alien passes this threshold-screening standard, his or her claim for protection…will be further examined…  The screening mechanism also allows for the expeditious review by an immigration judge of a negative screening determination and the quick removal of an alien with no credible claim to protection." [23]

"Essentially, the asylum officer is applying a threshold screening standard to decide whether an asylum [or torture] claim holds enough promise that it should be heard through the regular, full process or whether, instead, the person's removal should be effected through the expedited process." [24]

# 4    DEFINITION OF CREDIBLE FEAR OF PERSECUTION AND CREDIBLE FEAR OF TORTURE

## 4.1    Definition of Credible Fear of Persecution

According to statute, the term credible fear of persecution means that "there is a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under section 208 [of the INA]." [25]

Regulations provide that the noncitizen will also be found to have a credible fear of persecution if the noncitizen establishes that there is a significant possibility that he or she can establish eligibility for withholding of removal under section 241(b)(3) of the Act. [26]

## 4.2    Definition of Credible Fear of Torture

Regulations provide that the noncitizen will be found to have a credible fear of torture if the noncitizen establishes that there is a significant possibility that he or she is eligible for withholding of removal or deferral of removal under the Convention Against Torture, pursuant to 8 C.F.R. § 208.16 or § 208.17. [27]

---

[23] Immigration and Naturalization Service, *Regulations Concerning the Convention Against Torture*, 64 Fed. Reg. 8478, 8479 (Feb. 19, 1999).

[24] Bo Cooper, *Procedures for Expedited Removal and Asylum Screening under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996*, 29 CONN. L. REV. 1501, 1503 (1997).

[25] INA § 235(b)(1)(B)(v).

[26] 8 C.F.R. § 208.30(e)(2).

[27] 8 C.F.R. § 208.30(e)(3).

# 5     THE STANDARD OF PROOF FOR CREDIBLE FEAR DETERMINATIONS AND THE BURDEN OF PROOF

## 5.1     Credible Fear Standard of Proof: Significant Possibility

The party who bears the burden of proof must persuade the decision maker of the existence of certain factual elements according to a specified "standard of proof," or degree of certainty.  The relevant standard of proof specifies how convincing or probative the applicant's evidence must be.

In order to establish a credible fear of persecution or torture, the applicant must show a "significant possibility" that he or she could establish eligibility for asylum, withholding of removal, or deferral of removal.[28]

When interim regulations were issued to implement the credible fear process, the Department of Justice described the credible fear "significant possibility" standard as one that sets "a low threshold of proof of potential entitlement to asylum; many aliens who have passed the credible fear standard will not ultimately be granted asylum." Nonetheless, in the initial regulations, the Department declined suggestions to "adopt regulatory language emphasizing that the credible fear standard is a low one and that cases of certain types should necessarily meet that standard."[29]

In fact, the showing required to meet the "significant possibility" standard is higher than the "manifestly unfounded" standard favored by the Office of the United Nations High Commissioner for Refugees ("UNHCR") Executive Committee.[30]  **A claim that has no possibility, or only a minimal or mere possibility, of success, would not meet the "significant possibility" standard**.[31]

While a mere possibility of success is insufficient to meet the credible fear standard, the "significant possibility" standard does not require the applicant to demonstrate that the chances of success are more likely than not.

---

[28]  *See* INA § 235 (b)(1)(B)(v); 8 C.F.R. §§ 208.30(e)(2), (3).

[29]  Immigration and Naturalization Service, Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10317-20 (Mar. 6, 1997).

[30]  The Problem of Manifestly Unfounded or Abusive Applications for Refugee Status or Asylum No. 30 (XXXIV) – 1983, at https://www.refworld.org/docid/3ae68c6118.htm; *and see* UNHCR's Position on Manifestly Unfounded Applications for Asylum, 1 Dec. 1992, at https://www.refworld.org/docid/3ae6b31d83.html .  *See also* U.S. Committee on International Religious Freedom, Study on Asylum Seekers in Expedited Removal – Report on Credible Fear Determinations, pg. 170 (Feb. 2005).

[31]  *See Id.;* 142 CONG. REC. H11071, H11081 (daily ed. Sept. 25, 1996) (statement of Rep. Hyde) (noting that the credible fear standard was "redrafted in the conference document to address fully concerns that the 'more probable than not' language in the original House version was too restrictive").

8.[32]

## 5.2    Important Considerations in Interpreting and Applying the Standard

- The "significant possibility" standard of proof required to establish a credible fear of persecution or torture must be applied in conjunction with the standard of proof required for the ultimate determination on eligibility for asylum, withholding of removal, or protection under the Convention Against Torture.

  For instance, in order to establish a credible fear of torture, an applicant must show a "significant possibility" that he or she could establish eligibility for protection under the Convention Against Torture, i.e., a "significant possibility" that it is *"more likely than not"* that he or she would be tortured if removed to the proposed country of removal. This is a higher standard to meet than for an applicant attempting to establish a "significant possibility" that he or she could establish eligibility for asylum based upon a well-founded fear of persecution on account of a protected characteristic, i.e., a "significant possibility" that he or she could establish a *"reasonable possibility"* of suffering persecution on account of a protected characteristic if returned to his or her home country.

- Questions as to how the standard is applied should be considered in light of the nature of a *screening standard* to identify persons who *could* qualify for asylum or protection under the Convention against Torture, which may include some measure of doubt regarding whether the noncitizen will ultimately be granted asylum, withholding of removal, or CAT protection.

- In determining whether the noncitizen has a credible fear of persecution or a credible fear of torture, the asylum officer shall consider whether the applicant's case presents novel or unique issues warranting consideration in a merits proceeding.[33]

- Similarly, where there is:

  1. disagreement among the United States Circuit Courts of Appeal as to the proper interpretation of a legal issue; **or**,

  2. the claim otherwise raises an unresolved issue of law; **and**,

---

[32] Joseph E. Langlois. Asylum Division, Office of International Affairs*, Increase of Quality Assurance Review for Positive Credible Fear Determinations and Release of Updated Asylum Officer Basic Training Course Lesson Plan, Credible Fear of Persecution and Torture Determinations,* Memorandum to Asylum Office Directors, et al. (Washington, DC: 17 April 2006).

[33] 8 C.F.R. § 208.30(e)(4).

3. there is <u>no DHS or Asylum Division policy or guidance</u> on the issue, then

generally, the interpretation most favorable to the applicant is used when determining whether the applicant meets the credible fear standard.

## 5.3    Burden of Proof / Testimony and Country Conditions Information as Evidence[34]

The applicant bears the burden of proof to establish a credible fear of persecution or torture, which is determined under the significant possibility standard.

Because of the non-adversarial nature of credible fear interviews, while the burden is always on the applicant to provide evidence that meets the standard, there is a shared responsibility in developing the record in which asylum officers have an affirmative duty to elicit all information relevant to the legal determination.[35] The burden is on the applicant to establish a credible fear, but asylum officers must fully develop the record to support a legally sufficient determination.

An applicant's testimony is evidence to be considered and weighed along with all other evidence presented. Often times, in the credible fear screening process and context of expedited removal and detention, an applicant will not be able to provide additional evidence corroborating his or her otherwise credible testimony. An applicant may establish a credible fear with testimony alone if that testimony is detailed, consistent, and plausible. If an applicant's testimony is credible, officers cannot require corroboration when making a credible fear determination.[36]

According to the INA, the applicant's testimony may be sufficient to sustain the applicant's burden of proof if it is "credible, is persuasive, and refers to specific facts." To give effect to the plain meaning of the statute and each of the terms therein, although an AO cannot require corroboration if an applicant's testimony is found credible, the applicant's testimony must also be persuasive and refer to specific facts in order to establish his or her burden of proof without corroboration. Therefore, the terms "persuasive" and "specific facts" must have independent meaning above and beyond the first term "credible" such that an applicant may be credible, but nonetheless fail to satisfy his or her burden to establish the required elements of eligibility. "Specific facts" are distinct from statements of belief. As part of his or her duty to fully develop the record, an asylum officer should elicit testimony as to any specific facts underlying an applicant's statements of belief. When assessing the probative value of an applicant's testimony, the asylum officer must distinguish between fact and statements of belief and

---

[34] *See* RAIO Training Module, *Evidence* for RAIO determinations generally.

[35] 8 C.F.R. § 208.30(d) ("The purpose of the interview shall be to elicit all relevant and useful information bearing on whether the applicant has a credible fear of persecution or torture…").

[36] INA § 208(b)(1)(B)(ii); *see also Kiakombua v. Wolf*, No. 19-cv-1872, 2020 WL 6392824 (D.D.C. Oct. 31, 2020) (asylum officer cannot require an applicant to provide corroborating evidence at the credible fear stage where the applicant's testimony is otherwise found credible)

determine how much weight to assign to any claimed facts to meet the significant possibility standard.

Additionally, pursuant to the statutory definition of "credible fear of persecution," the asylum officer must take account of "such other facts as are known to the officer." Such "other facts" include relevant country conditions information.[37]

Similarly, country conditions information should be considered when evaluating a credible fear of torture. The Convention Against Torture and implementing regulations require consideration of "[e]vidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and [o]ther relevant information regarding conditions in the country of removal."

Moreover, Convention Against Torture regulations further require consideration of "all evidence relevant to the possibility of future torture." Accordingly, an adverse credibility determination may not be the sole basis for a negative credible fear of torture determination, and officers must consider whether objective evidence such as country of origin information may support a claim.[38] Objective evidence may also be sufficient to establish a credible fear of persecution.

## 5.4    Identity

The applicant must be able to credibly establish his or her identity by a preponderance of the evidence.[39] In many cases, an applicant will not have documentary proof of identity or nationality. However, credible testimony alone can establish identity and nationality. Documents such as birth certificates and passports are accepted into evidence if available. The officer may also consider information provided by Immigration and Customs Enforcement (ICE) or Customs and Border Protection (CBP).

# 6    CREDIBILITY

## 6.1    Credibility Standard

Before evaluating whether the applicant met his or her burden (applying the significant

---

[37]  8 C.F.R. §§ 208.16(c)(3)(iii), (iv).

[38]  *See Kamalthas v. INS,* 251 F.3d 1279, 1283-84 (9th Cir. 2001); *Mansour v. INS,* 230 F.3d 902, 908-09 (7th Cir. 2000); *see also Garcia v. Holder,* 749 F.3d 785, 791 (9th Cir. 2014) ("An adverse credibility determination does not, by itself, necessarily defeat a CAT claim . . . ."); *Shrestha v. Holder,* 590 F.3d 1034, 1048 (9th Cir. 2010) ("An adverse credibility determination is not necessarily a death knell to CAT protection."); *Matter of J-C-F-H-,* 27 I&N Dec. 211 (BIA 2018) ("Since the applicant lacked credibility and the objective evidence in the record does not independently establish his claim, he did not satisfy his burden to prove his eligibility for protection under the Convention Against Torture.") (citing *Shrestha*).

[39]  *See* RAIO Training Module, *Refugee Definition* for RAIO determinations generally.

possibility standard), the officer must determine whether the applicant has established his or her credibility by a preponderance of the evidence.[40] This credibility standard is similar to the affirmative asylum context, and is distinct from the lower significant possibility standard required to establish the other elements of the claim.

In making a credible fear determination, asylum officers are specifically instructed by statute to "[take] into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer."[41]

The asylum officer should assess the credibility of the assertions underlying the applicant's claim, considering the totality of the circumstances and all relevant factors.[42] The U.S. Supreme Court has held that to properly consider the totality of the circumstances, "the whole picture… must be taken into account." The Board of Immigration Appeals (BIA) has interpreted this to include taking into account the whole of the applicant's testimony as well as the individual circumstances of each applicant.[43]

## 6.2    Addressing Credibility in a Credible Fear Interview

The asylum officer must gather sufficient information to determine whether the noncitizen has a credible fear of persecution or torture. The applicant's credibility should be evaluated (1) only after all information is elicited and (2) in light of "the totality of the circumstances, and all relevant factors." [44]

In making this determination, the asylum officer should take into account the same factors considered in evaluating credibility in affirmative asylum adjudications, which are discussed in the RAIO Modules: *Credibility* and *Evidence*.[45]

While demeanor, candor, responsiveness and detail provided are to be taken into account when making a credibility determination in the credible fear screening process, an asylum officer must evaluate these factors by also taking into account cross-cultural factors, effects of trauma, the nature of expedited removal, and the unique aspects of the credible fear interview process, which are discussed in greater detail in the next section.

## 6.3    Assessing Credibility when Making a Credible Fear Determination

---

[40] *See* RAIO Training Module, *Evidence*, pp. 20-21 ("Burden of proof is different from credibility. . . [Y]ou cannot determine that an applicant has not met his or her burden of proof without first having done a complete credibility analysis.").

[41] INA § 235 (b)(1)(B)(v).

[42] *United States v. Cortez*, 449 U.S. 411, 417 (1981).

[43] *See* RAIO Training Module, *Credibility (Draft)* for RAIO determinations generally

[44] *Id.*

[45] *Id.;* RAIO Training Module, *Evidence*.

- In assessing credibility, the officer must consider the totality of the circumstances and all relevant factors.

- When considering the totality of the circumstances in determining whether the assertions underlying the applicant's claim are credible, the following factors must be considered as they may impact an applicant's ability to present his or her claim, some of which are unique to the screening context of credible fear interviews and determinations:

    1. trauma the applicant has endured;[46]

    2. passage of a significant amount of time since the described events occurred;

    3. certain cultural factors, and the challenges inherent in cross-cultural communication;[47]

    4. detention of the applicant;

    5. problems between the interpreter and the applicant, including problems resulting from differences in dialect or accent, ethnic or class differences, or other differences that may affect the objectivity of the interpreter or the applicant's comfort level;[48]

    6. unfamiliarity with speakerphone technology, the use of a telephonic interpreter the applicant cannot see, or the use of an interpreter that the applicant does not know personally; and

    7. the applicant's recent arrival in the U.S. and limited time to prepare for the interview after being apprehended by immigration enforcement authorities, including not being required to submit an application or any written account of their claim prior to the interview.

- During the credible fear interview, asylum officers should consider the applicant's initial statement to the CBP or ICE official and probe any inconsistencies between that statement and his or her testimony before the asylum officer. Such inconsistencies may

---

[46] RAIO Training Module, *Interviewing Survivors of Torture and Other Severe Trauma* for RAIO determinations generally.

[47] RAIO Training Module, *Interviewing - Working with an Interpreter* for RAIO determinations generally.

[48] Asylum officers must ensure that persons with potential biases against applicants on the grounds of race, religion, nationality, membership in a particular social group, or political opinion are not used as interpreters. *See International Religious Freedom Act of 1998*, 22 U.S.C. § 6473(a); RAIO Training Module, *IRFA (International Religious Freedom Act)* for RAIO determinations generally.

provide support for a negative credibility finding when taking into account the totality of the circumstances and all relevant factors.[49]

The sworn statement completed by CBP (Form I-867A/B) is not intended, however, to record detailed information about any fear of persecution or torture. The interview statement is intended to record whether or not the individual has a fear, not the nature or details surrounding that fear.[50] However, in some cases, the asylum officer may find that the CBP officer did, in fact, gather additional information from the applicant regarding the nature of his or her claim. In such cases, the applicant's prior statements can inform the asylum officer's line of questioning in the credible fear interview, and any inconsistencies between these prior statements and the statements being made during the credible fear interview should be probed and assessed.

A number of federal courts have cautioned decision makers to keep in mind the circumstances under which a noncitizen's statement to a CBP official is taken when considering whether an applicant's later testimony is consistent with the earlier statement.[51] For instance, the Seventh Circuit noted, "'airport interviews…are not always reliable indicators of credibility.'"[52] In addition, the Fourth Circuit identified the different purposes of CBP's interview for the sworn statement and the asylum process: "the purpose of these [sworn statement] interviews is to collect general identification and background information about the alien. The interviews are not part of the formal asylum process."[53]

Some factors to keep in mind include: 1) whether the questions posed at the port of entry or place of apprehension were designed to elicit the details of an asylum claim, and whether the immigration officer asked relevant follow-up questions; 2) whether the noncitizen was reluctant or afraid to reveal information during the first meeting with U.S.

---

[49] *Matter of J-C-H-F-*, 27 I&N Dec. 211 (BIA 2018) (Immigration Judge should assess the accuracy and reliability of the interview based on the totality of circumstances, rather than relying on any one factor among a list or mandated set of inquiries).

[50] *See* 8 C.F.R. § 235.3(b)(4) (stating that if a noncitizen indicates an intention to apply for asylum, or expresses a fear of persecution or torture, or a fear of return to his or her country, the "examining immigration officer shall record sufficient information in the sworn statement to establish and record that the alien has indicated such intention, fear, or concern," and should then refer the noncitizen for a credible fear interview).

[51] *See, e.g.*, *Balasubramanrim v. INS*, 143 F.3d 157 (3d Cir. 1998); *Lin Lin Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1279-80 (11th Cir. 2009); *cf. Ye Jian Xing v. Lynch*, 845 F.3d 38, 44-45 (1st Cir. 2017) (while not requiring specifically enumerated factors for examining the reliability of the sworn statement, noting that an interpreter was used and Ye understood the questions asked); *Joseph v. Holder*, 600 F.3d 1235, 1243 (9th Cir. 2010) (in examining statements in a prior bond hearing, noting, "[w]e have rejected adverse credibility findings that relied on differences between statements a petitioner made during removal proceedings and those made during less formal, routinely unrecorded proceedings.").

[52] *Moab v. Gonzales*, 500 F.3d 656, 660 (7th Cir. 2007) (quoting *Dong v. Gonzales*, 421 F.3d 573, 579 (7th Cir. 2005)).

[53] *Qing Hua Lin v. Holder*, 736 F.3d 343, 353 (4th Cir. 2013).

officials because of past abuse; and 3) whether the interview was conducted in a language other than the applicant's native language.

The Second Circuit has advised: "If, after reviewing the record of the [CBP] interview in light of these factors and any other relevant considerations suggested by the circumstances of the interview, the…[agency] concludes that the record of the interview and the alien's statements are reliable, then the agency may, in appropriate circumstances, use those statements as a basis for finding the alien's testimony incredible. Conversely, if it appears that either the record of the interview or the alien's statements may not be reliable, then the…[agency] should not rely solely on the interview in making an adverse credibility determination."[54]

## 6.4    Documenting a Credibility Determination

- The asylum officer must clearly record in the interview notes the questions used to inform the applicant of any relevant credibility issues, and the applicant's responses to those questions.

- When making a negative credibility determination, the officer must note any specific portions of the testimony found not credible, including the specific inconsistencies, lack of detail, or other relevant factors, the applicant's explanation, and the reason the explanation is deemed to be not reasonable.

- If information that impugns the applicant's testimony becomes available after the interview but prior to serving the credible fear determination, a follow-up interview must be scheduled to present the applicant with the potentially derogatory information and to provide the applicant with an opportunity to address the potentially adverse information. Credibility issues that have not been addressed with the applicant may not form the basis of a negative credibility determination.

## 7    ESTABLISHING A CREDIBLE FEAR OF PERSECUTION

## 7.1    General Considerations

---

[54] *Ramsameachire v. Ashcroft*, 357 F.3d 169, 179-81 (2d Cir. 2004) (holding that the BIA was entitled to rely on fundamental inconsistencies between the applicant's airport interview statements and his hearing testimony where the applicant was provided with an interpreter, given ample opportunity to explain his fear of persecution in a careful and non-coercive interview, and signed and initialed the typed record of statement).

- An applicant will be found to have a credible fear of persecution if there is a significant possibility the applicant can establish eligibility for asylum under section 208 of the Act.[55]

- Where an applicant has established a significant possibility of establishing eligibility for asylum based on past persecution, he or she has established a credible fear of persecution under INA 235(b)(1)(B)(v), and the asylum officer may not consider whether the presumption of a well-founded fear is rebutted by evidence of internal relocation or of changed circumstances.[56]

- When an applicant does not claim to have suffered any past harm or where the evidence is insufficient to show a significant possibility of establishing past persecution on account of a protected characteristic under section 101(a)(42)(A) of the Act, the asylum officer must determine whether there is a significant possibility the applicant could establish a well-founded fear of persecution under section 208 of the Act.[57]

## 7.2    Past Persecution

### 7.2.1   Severity of Harm:

For a credible fear of persecution, there must be a significant possibility the applicant can establish that the harm the applicant experienced was sufficiently serious to amount to persecution.

### 7.2.2   Nexus (Motivation):

For a credible fear of persecution, there must be a significant possibility the applicant can establish that the persecutor was motivated to harm him or her on account of his or her race, religion, nationality, membership in a particular social group, or political opinion.[58]

- In conducting credible fear screenings, there is <u>no requirement</u> that the applicant show a significant possibility of establishing that the persecutor is motivated *only* by the protected belief or characteristic of the applicant, or that the protected ground be "one central reason" motivating the persecutor. As long as there is a significant possibility that <u>a reason</u> motivating the persecutor is the applicant's

---

[55] INA § 235(b)(1)(B)(v); 8 C.F.R. § 208.30(e)(2); For the most recent Asylum Division guidance on eligibility for asylum under section 208 of the INA, please consult the latest applicable <u>RAIO Training Module</u> for RAIO determinations generally.

[56] *See Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 42-43 (D.D.C. 2020) (asylum officers may not consider discretionary factors from 8 C.F.R. § 208.13(b)(1)(i) at credible fear stage).

[57] *See* RAIO Training Module, *Well Founded Fear* for RAIO determinations generally.

[58] *See* RAIO Training Modules, *Nexus and the Protected Grounds (minus PSG)* and *Nexus – Particular Social Group* for RAIO determinations generally.

possession or perceived possession of a protected characteristic, the applicant may establish the harm is "on account of" a protected characteristic when making credible fear determinations.[59] In *Barajas-Romero*, the court held that "'a reason'" is a less demanding standard than 'one central reason.'"[60] The court further indicated that "'a reason' includes weaker motives than 'one central reason'" and that a "person may have 'a reason' to do something that is not his 'central' reason or even 'one central reason.'"[61]

- Particular Social Groups: The area of law surrounding particular social groups is evolving rapidly, and it is important for asylum officers to be informed about current DHS and Asylum Division guidance, as well as current case law and regulatory changes.[62]

- If the applicant establishes a credible fear based on past persecution, asylum officers are not required to ask additional nexus questions about other protected grounds (for both past persecution and future persecution). Asylum officers may not issue a negative determination without eliciting about all possible protected grounds.

### 7.2.3  Persecutor:

For a credible fear of persecution, there must be a significant possibility the applicant can establish that the entity that harmed the applicant (the persecutor) is either an agent of the government or an entity that the government is unable or unwilling to control.

### 7.3  Well-Founded Fear of Persecution

To establish a well-founded fear of persecution on account of a protected characteristic, an applicant must show that he or she has: 1) a subjective fear of persecution; and 2) that the fear has an objective basis.

- The applicant satisfies the subjective element if he or she credibly articulates a genuine fear of return. Fear has been defined as an apprehension or awareness of danger.

---

[59]  *Barajas-Romero v. Lynch*, 846 F.3d 351 (9th Cir. 2017) (correct standard for determining the nexus requirement for withholding of removal is "a reason" rather than the "one central reason" standard used for asylum claims). The "a reason" nexus standard should be used because the CF screening must identify applicants who have a significant possibility of establishing eligibility for either asylum or statutory withholding of removal. In a merits consideration of the applicant's eligibility for asylum, of course, the "one central reason" standard would be applied.

[60]  *Id*. at 360.

[61]  *Id*. at 359.

[62]  *See* RAIO Training Module, *Nexus – Particular Social Group* for RAIO determinations generally

- The applicant will meet the credible fear standard based on a fear of future harm if there is a significant possibility that he or she could establish that there is a reasonable possibility that he or she will be persecuted on account of a protected ground upon return to his or her country of origin.

- **Nexus (Motivation)**: For a credible fear of future persecution, there must be a significant possibility the applicant can establish that the persecutor would be motivated to harm him or her on account of his or her race, religion, nationality, membership in a particular social group, or political opinion.

  o In conducting credible fear screenings, there is no requirement that the applicant show a significant possibility of establishing that the persecutor would be motivated only by the protected belief or characteristic of the applicant, or that the protected ground be "one central reason" motivating the persecutor. As long as there is a significant possibility that a reason motivating the persecutor is the applicant's possession or perceived possession of a protected characteristic, the applicant may establish the harm is "on account of" a protected characteristic when making credible fear determinations. In *Barajas-Romero*, the court held that "'a reason'" is a less demanding standard than 'one central reason.'" The court further indicated that "'a reason' includes weaker motives than 'one central reason'" and that a "person may have 'a reason' to do something that is not his 'central' reason or even 'one central reason.'"

  o Particular Social Groups: The area of law surrounding particular social groups is evolving rapidly, and it is important for asylum officers to be informed about current DHS and Asylum Division guidance, as well as current case law and regulatory changes.

  o If the applicant establishes a credible fear of persecution, asylum officers are not required to ask additional nexus questions about other protected grounds (for both past persecution and future persecution). Asylum officers may not issue a negative determination without eliciting about all possible protected grounds.

### 7.3.1    The *Mogharrabi* Test:

*Matter of Mogharrabi* lays out a four-part test for determining well-founded fear.[63] To establish a credible fear of persecution on account of a protected characteristic based on future harm, there must be a significant possibility that the applicant can establish each of the following elements:

---

[63] *Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987).

1. **Possession (or imputed possession of a protected characteristic)**

   - For cases where no nexus to a protected ground is immediately apparent, the asylum officer in credible fear interviews should ask questions related to all five grounds to ensure that no nexus issues are overlooked.

2. **Awareness (the persecutor is aware or could become aware the applicant possesses the characteristic)**

3. **Capability (the persecutor has the capability to persecute the applicant)**

4. **Inclination (the persecutor has the inclination to persecute the applicant)**

## 7.3.2    Pattern or Practice[64]

The applicant need not show that he or she will be singled out individually for persecution, if the applicant shows a significant possibility that he or she could establish:

- There is a pattern or practice of persecution on account of any of the protected grounds of a group of persons similarly situated to the applicant; *and*

- The applicant is included in and is identified with the persecuted group, such that a reasonable person in the applicant's position would fear persecution.

## 7.3.3    Internal Relocation

Where an applicant has demonstrated a significant possibility of establishing eligibility for asylum based on past persecution, the applicant has established a credible fear of persecution under INA 235(b)(1)(B)(v) and the asylum officer may not consider whether the presumption of a well-founded fear is rebutted by evidence of internal relocation.[65]  In such a case where a credible fear of persecution is established via past persecution, evidence regarding the reasonableness of internal relocation does not have an impact on a credible fear finding and the interviewing officer generally should not elicit testimony or gather relevant information on whether internal relocation is available or reasonable.

Where an applicant has not demonstrated a significant possibility of establishing eligibility for asylum based on past persecution and the only potential credible fear claim is based on future persecution or torture, the interviewing officer should elicit testimony and gather relevant information on whether internal relocation is available and/or

---

[64]  *See* RAIO Training Module, *Well Founded Fear* for RAIO determinations generally. *See also* 8 C.F.R. § 208.13(b)(2)(iii).

[65]  *See Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 42-43 (D.D.C. 2020) (asylum officers may not consider discretionary factors from 8 CFR 208.13(b)(1)(i) at credible fear stage).

reasonable in order to assess whether the applicant has a credible fear of persecution or torture. Such questioning includes whether the applicant could avoid future harm by relocating within the country and if not, why not or if so, where the applicant could go and whether it would be reasonable for the applicant to relocate to that location under all of the circumstances.

If the future harm feared is persecution, where an individual could relocate within the relevant country to avoid future persecution and, under all the circumstances, there is not a significant possibility that it would be unreasonable for the applicant to do so, there would not be a significant possibility that the individual could establish eligibility for asylum or for statutory withholding of removal based on that feared future harm.[66] If an individual fearing future torture could internally relocate to avoid that torture, then the individual may not be able to establish eligibility for protection under CAT by showing it is more likely than not that the individual would be tortured in the country of removal.[67] Accordingly, for claims based solely on future persecution or torture, if it is evident that the individual could internally relocate to avoid future harm and it would be reasonable for the individual to do so, and there is no significant possibility to the contrary, the individual cannot pass the threshold screening of demonstrating a significant possibility of establishing eligibility for the underlying type of protection.

In determining the reasonableness of internal relocation in relation to a well-founded fear of persecution claim where the feared persecutor is a government or is government-sponsored, there is a presumption that there is no reasonable internal relocation option.[68] On the merits, this presumption may be overcome if a preponderance of the evidence shows that the applicant could avoid future persecution by relocating to another part of the applicant's country and that it would be reasonable to expect the applicant to relocate under all the circumstances.[69]

In determining the reasonableness of internal relocation in relation to a well-founded fear claim where the feared persecutor is a non-governmental entity or not government-sponsored, there must be a significant possibility that the applicant can demonstrate that they would be unable to avoid future persecution in another part of the country, or if it is possible to avoid future persecution through internal relocation, it would not be reasonable to do so under all the circumstances.[70]

In determining the reasonableness of internal relocation in relation to a well-founded fear claim, asylum officers should consider the following factors:

---

[66] 8 CFR 208.13(b)(2)(ii); 8 CFR 208.16(b)(2)
[67] 8 CFR 208.16(c)(3)(ii).
[68] 8 CFR 208.13(b)(3)(ii) (2020); 8 CFR 208.16(b)(3)(ii) (2020).
[69] *Id*.
[70] 8 CFR 208.13(b)(2)(ii), (b)(3)(i) (2020); 8 CFR 208.16(b)(2), (b)(3)(ii) (2020).

1. Whether the applicant would face other serious harm that may not be inflicted on account of one of the five protected grounds in the refugee definition, but is so serious that it equals the severity of persecution[71];

2. Any ongoing civil strife such as a civil war occurring in parts of the country;

3. Administrative, economic, or judicial infrastructure that may make it difficult for an individual to live in another part of the country;

4. Geographical limitations that could present barriers to accessing a safe part of a country or where an individual would have difficulty surviving due to the geography;

5. Social and cultural constraints such as age, gender, health, and social and familial ties or whether the applicant possess a characteristic, such as a particular language or a unique physical appearance, that would readily distinguish the applicant from the general population and affect his or her safety in the new location; ***and***

6. Any other factors specific to the case that would make it unreasonable for the applicant to relocate.

There is no requirement that an applicant first attempt to relocate in his or her country before flight. However, the fact that an applicant lived safely in another part of his or her country for a significant period of time before leaving the country may be evidence that the threat of persecution does not exist countrywide, and that the applicant can reasonably relocate within the country to avoid future persecution.

## 7.4    Multiple Citizenship

Persons holding multiple citizenships or nationalities must demonstrate a credible fear of persecution or torture in at least one country in which they are a citizen or national.  If the country of removal indicated is different from the applicant's country of citizenship or nationality, fear from the indicated country of removal must also be evaluated.[72]

Although the applicant would not be eligible for asylum unless he or she establishes eligibility with respect to all countries of citizenship or nationality, he or she might be entitled to withholding of removal with respect to one country and not the others. Therefore, the protection claim must be referred for a merits interview or hearing to determine this question.

---

[71] 8 C.F.R. 208.13(b)(1)(iii)(B); 65 FR 76121 at 76127; *Matter of L-S-*, 25 I&N Dec. 705, 714 (BIA 2012).
[72] *See* RAIO Training Module, *Refugee Definition* for RAIO determinations generally.

In addition, if the applicant raises a fear with respect to another country, aside from the country of citizenship or nationality or the country of removal, the officer should memorialize it in the file to ensure that the fear is explored in the future should DHS ever contemplate removing the person to this other country.

## 7.5    Statelessness/Last Habitual Residence

The asylum officer does not need to make a determination as to whether an applicant is stateless or what the applicant's country of last habitual residence is. The asylum officer should determine whether the applicant has a credible fear with respect to any country of proposed removal. If the applicant demonstrates a credible fear with respect to any country of proposed removal, regardless of citizenship or habitual residence, the applicant should be referred for a full proceeding since he or she may be eligible for withholding of removal with respect to that country.

## 8    ESTABLISHING A CREDIBLE FEAR OF TORTURE

An applicant will be found to have a credible fear of torture if the applicant establishes that there is a significant possibility that he or she is eligible for withholding of removal or deferral of removal under the Convention Against Torture (CAT), pursuant to 8 C.F.R. § 208.16 or § 208.17. To be eligible for withholding or deferral of removal under CAT, an applicant must establish that it is more likely than not that he or she would be tortured in the country of removal. The credible fear process is a "screening mechanism" that attempts to identify whether there is a significant possibility that an applicant can establish that it is more likely than not that he or she would be tortured in the country in question.[73]

To be eligible for withholding or deferral of removal, the applicant will have to establish in a merits proceeding that it is more likely than not that he or she will be tortured in the country of removal; therefore, a significant possibility of establishing eligibility for withholding or deferral of removal is necessarily a greater burden than establishing a significant possibility of eligibility for asylum. In other words, to establish a credible fear of torture, the applicant must show there is a significant possibility that he or she could establish in a merits proceeding that it is more likely than not he or she would be tortured in that country.

## 8.1    Definition of Torture

8 C.F.R. § 208.18(a) defines "torture" as "any act by which severe pain or suffering,

---

[73] *See* Immigration and Naturalization Service, *Regulations Concerning the Convention Against Torture*, 64 Fed. Reg. 8478, 8484 (Feb. 19, 1999); *see also* Asylum Division Officer Training Course, The Convention Against Torture (CAT) Determinations Lesson Plan, for a detailed discussion of the background of CAT and legal elements of the definition of torture.

whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." [74]

## 8.2    General Considerations

- U.S. regulations require that several elements be met before an act is found to constitute torture.[75] Because credible fear of torture interviews are employed as "screening mechanisms to quickly identify potentially meritorious claims to protection and to resolve frivolous ones with dispatch," parts of the torture definition that require complex legal and factual analyses may be more appropriately considered in a full hearing.[76]

- After the asylum officer determines that the applicant's testimony is credible,[77] the applicant establishes a credible fear of torture where there is a significant possibility that he or she could establish in a merits hearing or interview that:

    1. the feared harm would be specifically intended to inflict severe pain or suffering on the applicant;[78]

    2. the feared harm would constitute severe physical or mental pain or suffering;[79]

    3. the feared harm would be inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in official capacity; ***and***

    4. the applicant would be in the offender's custody or physical control.[80]

    5. The harm would not arise only from, or be inherent in or incidental to, lawful sanctions. However, sanctions that defeat the object and purpose of the

---

[74] 8 C.F.R. § 208.18(a); *see also* Asylum Division Officer Training Course, The Convention Against Torture (CAT) Determinations Lesson Plan.

[75] 8 C.F.R. §§ 208.18(a)(1)-(8).

[76] Immigration and Naturalization Service, *Regulations Concerning the Convention Against Torture*, 64 Fed. Reg. 8478 (Feb. 19, 1999).

[77] *See* section VI., *Credibility*, above, regarding establishing credibility.

[78] 8 C.F.R. § 208.18(a)(5).

[79] Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture. 8 C.F.R. § 208.18(a)(2).

[80] 8 C.F.R. § 208.18(a)(6).

Convention are not lawful sanctions.  Harm arising out of such sanctions may constitute torture.[81]

- According to the regulations implementing the Convention Against Torture, "In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including, but not limited to:

  a.  Evidence of past torture inflicted upon the applicant;
  b.  Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
  c.  Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and
  d.  Other relevant information regarding conditions in the country of removal."[82]

Thus, the decision maker must consider evidence of each of these factors, among other evidence relevant to the possibility of future torture, but no one factor is dispositive of an applicant's CAT claim.[83]  These considerations should be assessed taking into account the screening standard.

- In the credible fear context, when assessing whether there is a significant possibility that it would be more likely than not that an applicant would be tortured in the proposed country of removal, officers should consider evidence relevant to the possibility of future torture, including, but not limited to, evidence of past torture of the applicant, evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable, and other relevant information regarding country conditions in the country of removal. The officer should consider evidence of these factors, among other evidence relevant to the possibility of future torture, but no one factor is dispositive of an applicant's CAT claim.[84]  These considerations should be assessed taking into account the screening standard.

- Unlike a finding of past persecution, a finding that an applicant suffered torture in the past does not raise a presumption that the applicant will be subject to torture in the future.  However, evidence of past torture should be considered as strong evidence that the entity could do so in the future.

---

[81]  8 C.F.R. § 208.18(a)(3).

[82]  8 C.F.R. § 208.16(c)(3).

[83]  *See* *Maldonado v. Lynch*, 786 F.3d 1155, 1164 (9th Cir. 2015) (*en banc*) ("no one factor is determinative").

[84]  *See* *Maldonado v. Lynch*, 786 F.3d 1155, 1164 (9th Cir. 2015) (*en banc*) ("no one factor is determinative").

# 9    APPLICABILITY OF BARS TO ASYLUM AND WITHHOLDING OF REMOVAL[85]

## 9.1    No Bars Considered in Credible Fear Screening

Evidence that the applicant is, or may be, subject to a bar to asylum or withholding of removal does not have an impact on a credible fear finding.[86]

## 9.2    Asylum Officer Must Elicit Testimony

Even though the bars to asylum do not apply to the credible fear determination, the interviewing officer must elicit and make note of all information relevant to whether or not a bar to asylum or withholding applies.

There are no bars to a grant of deferral of removal to a country where the applicant would be tortured.[87]

Information should be elicited about whether the applicant:

- participated in the persecution of others;

- has been convicted by a final judgment of a particularly serious crime (including an aggravated felony), and constitutes a danger to the community of the United States;[88]
- is a danger to the security of the United States;

- is subject to the inadmissibility or deportability grounds relating to terrorist activity as identified in INA section 208(b)(2)(A)(v);

- has committed a serious nonpolitical crime;

- is a dual or multiple national who can avail himself or herself of the protection of a third state;[89] *and*,

---

[85] Please consult the appropriate RAIO Training Module for RAIO determinations generally

[86] 8 C.F.R. § 208.30(e)(5).  While certain rulemaking efforts sought to apply certain bars to asylum eligibility in credible fear proceedings, all of those rulemaking efforts are either vacated, enjoined, or not yet in effect.  *See, e.g.*, *Pangea Legal Servs v. DHS*, 512 F.Supp.3d 966 (N.D. Cal.2021) (preliminarily enjoining the Global Asylum Rule); *Capital Area Immigrants' Rights Coal. v. Trump*, 471 F. Supp. 3d 25 (D.D.C. 2020) (vacating the Third Country Transit interim final rule); *O.A. v. Trump*, 404 F. Supp. 3d 109 (D.D.C. 2019) (preliminarily enjoining the Proclamation interim final rule); *Security Bars and Processing; Delay of Effective Date*, 86 FR 15069 (March 22, 2021) (interim final rule delaying effective date of the Security Bars Final Rule).

[87] 8 C.F.R. § 208.17(a).

[88] INA § 208(b)(2)(B)(i).

[89] This bar and the firm resettlement bar are not bars to withholding or deferral of removal.  See INA § 241(b)(3).

---

- was firmly resettled in another country prior to arriving in the United States.

## 9.3    Flagging Potential Bars

The officer must keep in mind that the applicability of these bars requires further evaluation that will take place in the merits proceeding if the applicant otherwise establishes a credible fear of persecution or torture.  In such cases, the officer should consult a supervisory officer, follow procedures on "flagging" such information for the merits hearing or interview and prepare the appropriate paperwork for a positive credible fear finding.  Officers may be asked to prepare a memorandum to file outlining the potential bar that may be triggered.  Although positive credible fear determinations that involve a possible mandatory bar no longer require HQ review, supervisory officers may use their discretion to forward the case to HQ for review.[90]

# 10    OTHER ISSUES

## 10.1    Treatment of Dependents[91]

A spouse or child of a principal applicant who arrived in the United States concurrently with the principal applicant shall be included in that principal applicant's positive credible fear evaluation and determination, unless the principal applicant or the spouse or child declines such inclusion. Any noncitizen may have his or her evaluation and determination made separately, if that noncitizen expresses such a desire. The option for members of a family unit to have their evaluations and determinations made separately shall be communicated to all family members at the beginning of the interview process.

For purposes of family units in credible fear determinations, the category of "child" includes only unmarried persons under 21 years of age.

The asylum officer shall include other accompanying family members who arrived in the United States concurrently with a principal applicant in that principal applicant's positive fear evaluation and determination for purposes of family unity.

The regulatory provision that allows a spouse or child to be included in a principal applicant's positive credible fear evaluation and determination does not change the statutory rule that any noncitizen subject to expedited removal who has a credible fear has the right to be referred for a merits interview or hearing.

---

[90] Procedures Manual, Credible Fear Process (Draft); Joseph E. Langlois. Asylum Division, Refugee, Asylum and International Operations Directorate.  *Revised Credible Fear Quality Assurance Review Categories and Procedures*, Memorandum to Asylum Office Directors, et al. (Washington, DC: 23 Dec. 2008).

[91] 8 C.F.R. § 208.30(b).

## 10.2    Attorneys and Consultants[92]

The applicant may consult with any person prior to the credible fear interview. The applicant is also permitted to have a consultant present at the credible fear interview. Asylum officers should determine whether or not an applicant wishes to have a consultant present at the credible fear interview. Although a noncitizen is permitted by regulation to have a consultant present at a credible fear interview, the availability of a consultant cannot unreasonably delay the process. A consultant may be a relative, friend, clergy person, attorney, or representative. If the consultant is an attorney or representative, he or she is not required to submit a Form G-28, *Notice of Entry of Appearance as Attorney or Accredited Representative*, but may submit one if he or she desires.[93]

## 10.3    Factual Summary

For each credible fear interview, the asylum officer must create a summary of material facts as stated by the applicant. At the conclusion of the interview, the asylum officer must review the summary with the applicant and provide the applicant with an opportunity to correct any errors. The factual summary and its review should be contemporaneously recorded at the end of the asylum officer's interview notes.[94]

# 11    SUMMARY

## 11.1    Expedited Removal

In expedited removal, certain noncitizens seeking admission to the United States are immediately removable from the United States by DHS, unless they indicate an intention to apply for asylum or express a fear of persecution or torture or a fear of return to their home country. Noncitizens subject to expedited removal are not entitled to a merits interview or hearing or some other form of further review unless they are able to establish a credible fear of persecution or torture.

## 11.2    Function of Credible Fear Screening

The purpose of the credible fear screening process is to identify persons subject to expedited removal who might ultimately be eligible for asylum under section 208 of the INA, withholding of removal under section 241(b)(3) of the Act, or withholding of removal or deferral of removal under the Convention Against Torture.

---

[92] 8 C.F.R. § 208.30(d)(4).

[93] 8 C.F.R. § 208.30(d)(4); Procedures Manual, Credible Fear Process (Draft).

[94] 8 C.F.R. § 208.30(d)(6).

## 11.3    Credible Fear Standard of Proof: Significant Possibility

In order to establish a credible fear of persecution or torture, the applicant must show a "significant possibility" that he or she could establish eligibility for asylum, withholding of removal, or deferral of removal.

The "significant possibility" standard of proof required to establish a credible fear of persecution or torture must be applied in conjunction with the standard of proof required for the ultimate determination on eligibility for asylum, withholding of removal, or protection under the Convention Against Torture.

The asylum officer shall consider whether the applicant's case presents novel or unique issues that merit consideration in a merits proceeding.

Where there is disagreement among the United States Circuit Courts of Appeal as to the proper interpretation of a legal issue; or the claim otherwise raises an unresolved issue of law; and, there is no DHS or Asylum Division policy or guidance on the issue, then generally the interpretation most favorable to the applicant is used when determining whether the applicant meets the credible fear standard.

## 11.4    Credibility

The asylum officer should assess the credibility of the assertions underlying the applicant's claim, considering the totality of the circumstances and all relevant factors.

## 11.5    Establishing a Credible Fear of Persecution

Where an applicant has established a significant possibility of establishing eligibility for asylum based on past persecution, he or she has established a credible fear of persecution under INA 235(b)(1)(B)(v) and the asylum officer may not consider whether the presumption of a well-founded fear is rebutted by evidence of internal relocation or of changed circumstances.

When an applicant does not claim to have suffered any past harm or where the evidence is insufficient to establish a significant possibility of past persecution under section 208 of the Act, the asylum officer must determine whether there is a significant possibility the applicant could establish a well-founded fear of persecution on account of a protected characteristic under section 208 of the Act.

## 11.6    Establishing a Credible Fear of Torture

In order to be eligible for withholding or deferral of removal under CAT on the merits, an applicant must establish that it is *more likely than not* that he or she would be tortured in the country of removal.  Therefore, a significant possibility of establishing eligibility for withholding or deferral of removal is necessarily a greater burden than establishing a significant possibility of eligibility for asylum.

After establishing that the applicant's testimony would be found credible, the applicant satisfies the credible fear of torture standard where there is a significant possibility that he or she could establish in a full withholding of removal proceeding that: (a) the torturer specifically intends to inflict severe physical or mental pain or suffering; (b) the harm constitutes severe pain or suffering; (c) the torturer is a public official or other person acting in an official capacity, or someone acting at the instigation of or with the consent or acquiescence of a public official or someone acting in official capacity; and (d) the applicant is in the torturer's custody or physical control.  Torture does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions. However, sanctions that defeat the object and purpose of the Convention are not lawful sanctions. Harm arising out of such sanctions may constitute torture.

Evidence that an entity inflicted torture on the applicant in the past should be considered as strong evidence that the entity could do so in the future.

Under the Convention Against Torture, the burden is on the applicant to show that it is more likely than not that he or she will be tortured, and one of the relevant considerations is the possibility of internal relocation.

## 11.7    Other Issues

While the mandatory bars to asylum and withholding of removal do not apply to credible fear determinations, asylum officers must elicit and make note of all information relevant to whether or not a bar to asylum or withholding applies.

A spouse or child of a principal applicant who arrived in the United States concurrently with the principal applicant shall be included in the noncitizen's positive credible fear evaluation and determination, unless the principal applicant or the spouse or child declines such inclusion. Any noncitizen may have his or her evaluation and determination made separately, if they express such a desire.

The applicant may consult with any person prior to the credible fear interview.  The applicant is also permitted to have a consultant present at the credible fear interview.  A consultant may be a relative, friend, clergy person, attorney, or representative.

For each credible fear interview, the asylum officer must create a summary of material facts as stated by the applicant and review the summary with the applicant.